United States Court of Appeals,

Eleventh Circuit.

No. 95-6384.

Oliver Dominique Gerard Marin Anthille MAGNIN, as personal representative of the estate of Dr. Dominique Jean Louis Lachiver, Deceased, Plaintiff-Appellant,

v.

TELEDYNE CONTINENTAL MOTORS, a Division of Teledyne Industries, Inc.; Teledyne Industries, Inc.; and J.B. Smith, Defendants-Appellees.

Aug. 15, 1996.

Appeal from the United States District Court for the Southern District of Alabama. (No. CV-94-0913-BH-C), William Brevard Hand, Judge.

Before CARNES, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

CARNES, Circuit Judge:

On November 12, 1992, Dr. Dominique Jean Louis Lachiver, a French citizen, died in the crash of a private plane he was piloting in France. This appeal is an outgrowth of a products liability and wrongful death action brought by Oliver Dominique Gerard Marin Anthille Magnin, the French personal representative of Lachiver's estate. The complaint was filed in Alabama state court against two defendants: Teledyne Industries, Inc., the manufacturer of the airplane's engine; and J.B. Smith, a Teledyne employee and Alabama citizen.

The complaint alleged that Lachiver's fatal crash was proximately caused by Teledyne's and Smith's negligent inspection and wrongful certification of the aircraft's engine as airworthy,

[*]Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

and it expressly described Smith as "a designated manufacturing inspection representative (DMIR) that certified engines "airworthy' or safe for exportation and installation on aircraft."  After describing the alleged defect in the aircraft engine, the complaint stated that, "Smith, as the DMIR (Designated Manufacturing Inspection Representative) signed the "Export Certificate of Airworthiness' for the aforesaid aircraft engine so that it was allowed to be exported in the defective condition set out hereinabove."  The complaint asserted against both Smith and Teledyne a claim of negligence in failing "to properly inspect or detect the defects associated with the engine," and breach of express or implied warranty claims in connection with issuance of the Expert Certificate of Airworthiness certifying that the aircraft engine was airworthy and safe for export.

The defendants removed the case to federal district court pursuant to 28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute.  In their petition for removal, the defendants characterized the complaint as alleging that Smith was liable for damages, because he was a DMIR who issued an Export Certificate of Airworthiness for an allegedly defective engine.  The removal petition further stated that Smith's duties and responsibilities in connection with the inspection and certification of Teledyne aircraft engines arose solely because he had been designated by the Director of the Federal Aviation Administration ("FAA") as a DMIR, and as such he was a representative of the FAA with authority to perform its inspection and certification functions.  The defendants contended in their petition that removal was proper because, "Smith

was acting on behalf of the FAA, under the authority granted to him by the FAA, and within the limits prescribed by the FAA, when he did the act for which he is being sued."  After the case was removed to federal court, Magnin moved to remand it to state court.  The district court denied that remand motion.

Thereafter, the defendants moved to dismiss the case altogether on the basis of *forum non conveniens.*  The district court granted that motion, subject to certain conditions designed to protect Magnin, and dismissed the case.  Magnin filed this appeal.  He contends that the district court erred in denying his motion to remand.  Alternatively, he contends that if removal jurisdiction does exist, the district court erred in dismissing the case on the basis of *forum non conveniens.*  For the reasons explained below, we affirm.

## I. DISCUSSION

A. Removal Jurisdiction

28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute, allows removal of any civil or criminal action against "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office."  The right of removal "is made absolute whenever a suit in a state court is for any act "under color' of federal office, regardless of whether the suit could originally have been brought in a federal court."  *Willingham v. Morgan,* 395 U.S. 402, 406, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969).  If the statutory prerequisites are satisfied, section 1442(a)(1) provides an independent federal jurisdictional basis.

The purpose of section 1442(a)(1) is to "permit[ ] the removal of those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed ... under color of office." *Murray v. Murray,* 621 F.2d 103, 107 (5th Cir.1980). In *Willingham,* the Supreme Court noted that "the removal statute is an incident of federal supremacy, and that one of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties." 395 U.S. at 405, 89 S.Ct. at 1815. "[T]he test for removal should be broader, not narrower, than the test for official immunity." *Id.*

Proper removal of an action under section 1442(a)(1) has historically required the satisfaction of two separate requirements. First, the defendant must advance a "colorable defense arising out of [his] duty to enforce federal law." *Mesa v. California,* 489 U.S. 121, 133, 109 S.Ct. 959, 966–67, 103 L.Ed.2d 99 (1989) (quoting *Willingham,* 395 U.S. at 406–07, 89 S.Ct. at 1816). That defense need only be plausible; its ultimate validity is not to be determined at the time of removal. *Id.* at 129, 109 S.Ct. at 964. However, absent the assertion of a federal defense, a state court action against a federal officer is not removable. *Id.*

Second, the defendant must establish that there is a "causal connection between what the officer has done under asserted official authority" and the action against him. *Maryland v. Soper,* 270 U.S. 9, 33, 46 S.Ct. 185, 190, 70 L.Ed. 449 (1926) (interpreting predecessor statute); *see also Willingham,* 395 U.S.

at 409, 89 S.Ct. at 1817. However, the Supreme Court has held that, in a civil suit such as this, it is sufficient for the defendant to show that his relationship to the plaintiff "derived solely from [his] official duties." *Willingham,* 395 U.S. at 409, 89 S.Ct. at 1817. In such a case, the causal connection requirement "consists, simply enough, of the undisputed fact that [the defendant was] on duty, at [his] place of federal employment, at all the relevant times." *Id.* If the question raised by the plaintiff is whether the defendant was engaged in "some kind of frolic," or acting in contravention of his official duties, the parties will have the opportunity to present their versions of the facts to a federal court. *Id.*

In this case, the complaint specifically named Smith as a DMIR. A DMIR is an authorized agent of the FAA. In creating the office of Federal Aviation Administrator and defining the powers and duties of that office, Congress authorized the Administrator to delegate some of those duties. 49 U.S.C. § 1355 (repealed in 1994 and replaced by 49 U.S.C. § 44702(d)). In particular, the Administrator may:

> delegate to any properly qualified private person ... any work, business, or function respecting (1) the examination, inspection and testing necessary to the issuance of certificates under subchapter VI of this chapter, and (2) the issuance of such certificates in accordance with standard established by him.

*Id.* The Administrator has made such delegations to DMIRs around the country, one of whom is Smith.

Magnin's complaint alleged that Smith proximately caused the fatal crash by signing the export certificate. Smith signed that export certificate only in his capacity as an agent of the FAA,

*i.e.,* as a DMIR, and the complaint itself pleads that connection. The defendants removed the case to federal court, contending that Smith's connection with the wrong allegedly done was in his official capacity as a DMIR.

The removal petition avers that "[i]n his capacity as a designated manufacturing inspection representative (DMIR), and in executing the airworthiness certificate, Mr. Smith was acting under an officer or agency of the United States and was acting under color of such office within the meaning of 28 U.S.C. § 1442(a)(1)." It further states:  "Smith's actions as DMIR were performed in accordance with the Certificate of Designation ... and Certificate of Authority....  Smith was acting on behalf of the FAA, under the authority granted to him by the FAA, and *within the limits prescribed by the FAA,* when he did the act for which he is being sued."  (emphasis added.)

Smith's removal petition demonstrates that the exercise of federal jurisdiction is proper.  At least part of Smith's defense is that he acted within the scope of his federal duties, that what he did was required of him by federal law, and that he did all federal law required.  That defense raises a federal question, which justifies removal.  The extent to which federal law imposes certain requirements upon Smith as a DMIR, and whether it may afford him any corresponding protection as a DMIR from tort liability, are issues of federal law.

> To assert that a federal statute does not impose certain obligations whose alleged existence forms the basis of a civil suit is to rely on the statute in just the same way as asserting that the statute does impose other obligations that may shield the federal officer against civil suits.  Both are equally defensive and equally based in federal law.

*Mesa,* 489 U.S. at 130, 109 S.Ct. at 965. Removal jurisdiction lies because, at least in respect of Magnin's claim that Smith's issuance of the certificate proximately caused the crash, Smith's relationship to the plaintiff "derived solely from [his] official duties," *Willingham,* 395 U.S. at 409, 89 S.Ct. at 1817. It is not of "any objection that questions are involved which are not all of a Federal character. If one [question of Federal character] exist[s], if there be a single such ingredient in the mass, it is sufficient. That element is decisive upon the subject of jurisdiction." *Mesa,* 489 U.S. at 129, 109 S.Ct. at 964 (quotation marks and citation omitted).

Magnin has argued to us that he never intended to pursue a claim against Smith for violating the federal law duties imposed upon him as a DMIR, but instead seeks only a determination that Smith was negligent in breaching a common law duty, or is otherwise liable for breaching a duty imposed by products liability law. Magnin asserts that his complaint identified Smith as a DMIR only as a factual matter, and not in order to state a claim against Smith under federal law. Putting aside for the moment Smith's use of his DMIR status as a defense, we cannot accept Magnin's post-hoc characterization of the complaint. The complaint is concise, and it would be unnatural to read the DMIR averments as unnecessary to any claim. Moreover, the breach of warranty claim is tied to the Export Certificate of Airworthiness, and the complaint avers that Smith signed that certificate in his capacity as DMIR. We must assess the complaint as it stood when the removal petition was filed, not as Magnin may now wish he had crafted it.

This is, of course, not to say that Magnin cannot prevail against Smith on the merits. The scope of our inquiry here is only whether Smith has advanced a colorable federal defense (including an assertion that he complied with all his federal law obligations), not whether his defense will be successful. *E.g., Mesa,* 489 U.S. at 133, 109 S.Ct. at 966-67. In light of the complaint in this case, which specifically identifies Smith as a DMIR, specifically alleges that he exercised his official authority as a DMIR in signing the export certificate when the engine was not airworthy, and specifically avers that that was a proximate cause of the crash, removal was proper.[1]

B. *Forum Non Conveniens*

We review a dismissal based on *forum non conveniens* only for abuse of discretion. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). Magnin contends that the district court did abuse its discretion in this case. Alternatively, he argues that the court's explanation for granting the dismissal was inadequate and that the case should be remanded

---

[1]We reject Magnin's contention that removal jurisdiction does not lie because the defendants did not identify by name an individual United States officer under whom Smith acted. The statute and regulations make it clear that DMIRs act under the FAA Administrator, *see,* 48 Fed.Reg. 16176 (1983) ("Private persons selected to act as designees are Representatives of the Administrator...."); 49 U.S.C. § 1355, and the removal notice stated that Smith's certificate of designation as a DMIR had been issued by direction of the FAA Administrator, who had delegated inspection and certification authority to Smith.

Likewise, we reject Magnin's contention that DMIRs are not sufficiently "controlled" by any government official to qualify as persons "acting under" a federal officer within the meaning of § 1442(a)(1). *See* 14 C.F.R. § 183.31 ("DMIR may, within the limits prescribed by, and under the general supervision of, the Administrator, do the following....").

for further consideration and for more detailed findings.

The district court did not abuse its discretion in dismissing this case. Dismissal on *forum non conveniens* grounds is within the district court's range of discretion when trial in the plaintiff's chosen forum would impose a heavy burden on the defendant or the court, *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), and an adequate alternative forum is available, *Piper Aircraft Co.,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. Here the defendants agreed to submit to the jurisdiction of an alternative forum (in France), rendering that forum available. *Veba-Chemie A.G. v. M/V Getafix,* 711 F.2d 1243 (5th Cir.1983); *see also Piper Aircraft Co.,* 454 U.S. at 252 n. 18, 102 S.Ct. at 264 n. 18 ("Rules roughly equivalent to American strict liability are effective in France."); *Mediterranean Golf, Inc. v. Hirsh,* 783 F.Supp. 835, 841 n. 6 (D.N.J.1991) (observing that French law applies "a very broad statutory basis for tort liability" (citing French Civil Code, Articles 1382-1384)).

As to the hardship inquiry, there are a number of factors indicating that trying the case in Mobile would impose a heavy burden on the defendants and the local federal district court. Witnesses such as the crash investigators, eyewitnesses to the crash, the owner of the aircraft, those who maintained it, and the damage witnesses, are all in France.[2] Presumably these individuals

---

[2]Magnin argues that many of the French witnesses will be unnecessary, because, he contends, the French accident reports and other evidence will establish his averments that engine failure caused the crash. Of course, the cause of the crash has not yet been conceded, nor has it been established in any court of law. If we were to operate on the assumption that all of Magnin's averments are true, then there would be little or no

are French-speaking and, if the case were tried in Mobile, their testimony would have to be translated. The aircraft wreckage, including the allegedly defective engine, is in France. The parties have agreed that French substantive law applies. So, if the case were tried in Mobile, a federal judge in Alabama would have to attempt to divine and correctly apply French substantive law. And we might thereafter have to do the same thing, if an appeal is filed. Far better that the case be tried in France by one or more jurists as familiar with French law as we are unfamiliar with it. *Piper Aircraft Co.,* 454 U.S. at 251, 102 S.Ct. at 263 (public interest factors point towards dismissal where the district court would have to "untangle problems ... in law foreign to itself" (quoting *Gulf Oil Corp.,* 330 U.S. at 509, 67 S.Ct. at 843)). Other factors that indicate France is the better forum for litigation of this case include the unavailability of compulsory process to secure attendance of French witnesses in a court in this country, and the cost of attendance of any French witnesses who agree to come to this country to testify. *See, e.g., Gulf Oil Corp.,* 330 U.S. at 508-09, 67 S.Ct. at 843.

Magnin argues that the district court failed to give sufficient weight to his choice of forum. The Supreme Court has spoken to that factor in this circumstance, holding that "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum," but "[w]hen the plaintiff is foreign ... this assumption is much less reasonable," so that "a foreign plaintiff's choice deserves less deference." *Piper*

need for a trial anywhere.

*Aircraft Co.,* 454 U.S. at 256, 102 S.Ct. at 266.[3]

Magnin also points out, almost in passing, that if the case is tried in France he will not receive a jury trial, nor will he be able to obtain counsel through a contingency fee arrangement, because such fee arrangements are not permitted in France. As cherished as trial by jury is in our law, and as cherished as contingency fee arrangements have become to some plaintiffs and their attorneys, Magnin has not cited us to any Supreme Court or court of appeals decision giving such considerations substantial weight in *forum non conveniens* analysis. The argument is particularly weak in regard to contingency fees. In *Coakes v. Arabian American Oil Co.,* 831 F.2d 572, 576 (5th Cir.1987), the Fifth Circuit held that the ban against contingency fees in England should not significantly influence the *forum non conveniens* determination, and observed that, "[i]f the lack of a contingent fee system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most forums." The same is pretty much true of trial by jury. As the Supreme Court noted in *Piper Aircraft Co.,* 454 U.S. at 252 n. 18, 102 S.Ct. at 264 n. 18, "jury trials are almost always available in the United States, while they are never provided in civil law jurisdictions," and "[e]ven in the United Kingdom, most civil actions are not tried by a jury." Yet, there are numerous

---

[3]Magnin points out that only four Justice's joined that part of the *Piper Aircraft Co.* opinion, but he fails to point out that because two Justices did not participate in the decision, the four Justices were a majority of those who did. Thus, we are bound by that holding, which we deem to be well-reasoned in any event.

decisions dismissing cases in favor of a civil law jurisdiction forum, and in favor of United Kingdom as a forum.

In order to avoid unnecessary prejudice to Magnin, the district court wisely attached to the dismissal conditions to which the defendants have agreed. For example, the defendants agreed to submit to the jurisdiction of the French court, waive any statute of limitations or jurisdictional defenses, and satisfy any final judgment. They also agreed that to the extent discovery was conducted in the United States, it would be done in accordance with the Federal Rules of Civil Procedure.

The district court did not abuse its discretion in dismissing the case, subject to those conditions. Nor did the district court abuse its discretion, as Magnin urges, by not issuing a sufficiently detailed order. We can discern the court's reasoning from its order and the record, and that is all that is required in that respect.

## II. CONCLUSION

The judgment of the district court denying Magnin's motion to remand, and dismissing the case, is AFFIRMED.