**Jack KING, as Personal Representative of the ESTATE OF Jessica KING, et al., Plaintiff,**

v.

**CESSNA AIRCRAFT CO., a Kansas corporation, Defendant.**

No. 03–20482–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Oct. 21, 2005.

Aaron Samuel Podhurst, Steven Craig Marks, Podhurst Orseck Josefsberg et al., Miami, FL, Gerald C. Sterns, Sterns & Walker, Oakland, CA, Michael P. Verna, Bowles & Verna, Walnut Creek, CA, Herman Joseph Russomanno, Russomano & Borello, Miami, FL, for Jack King, as personal representative of the Estate of Jessica King, deceased, Barbara Brega, plaintiffs.

Philip Dixon Parrish, Henry Morrison Knoblock, Anthony Vincent Falzon, Herbert Dongjin Kim, Knoblock & Dohner, Miami, FL, Miguel A. Estrada, Matthew D. McGill, Gibson Dunn & Crutcher, Washington, DC, Richard J. Doren, Gibson Dunn & Crutcher, Los Angeles, CA, Edward A. Moss, Shook Hardy & Bacon, Miami, FL, Keith Gerrard, Erin E. Thakkar, Perkins Coie, Seattle, WA, Christopher David Brown, Shook Hardy & Bacon LLP, Miami, FL, for Cessna Aircraft Company, a foreign corporation, Jeppesen Sanderson, Inc., a foreign corporation dba Jeppesen Company, Textron, Inc., a foreign corporation, defendants.

## ORDER ON FORUM NON CONVENIENS

MORENO, District Judge.

### I. Background

This case stems from a tragic airplane crash at the Linate airport in Milan, Italy, in 2001. Plaintiffs are numerous personal representatives of the estates of those who died as a result of the crash. Defendant Cessna chartered an aircraft for a demonstration flight for potential aircraft purchasers. As the Cessna aircraft taxied for take-off in dense fog, it crossed an active runway and collided with a departing commercial aircraft. The collision killed all persons on board both aircrafts. In sum, 118 people died and four ground personnel were injured.

With their first complaint, Plaintiffs alleged that the crash was caused by Defendant's failure to properly implement policies and procedures in relation to the demonstration flight. Plaintiffs' claims have since been modified and Plaintiffs now allege that Defendant is strictly liable for conducting the ultra-hazardous activity of flying an aircraft in dense fog, and that Defendant is directly liable for the negligent hiring and supervision of the chartered flight crew.

Shortly after Plaintiffs filed their first complaint, Defendant moved this Court to dismiss the case for *forum non conveniens*. This Court denied the motion, though it was a close case. The Court deferred to the choice of forum of Jack King, the plaintiff in the first filed case, because he is a United States citizen. Prior to that decision, the Court, for the sake of economy and efficiency consolidated Jack King's case with those of the 69 other Plaintiffs, all European citizens. Following the denial of its motion to dismiss, Defendant moved for Reconsideration, and the Court again denied Defendant's motion without an opinion and with leave to refile after the King trial.

Since the prior denied motions, the case has changed. Both parties have modified their claims. Issues of Italian law which were deemed simple in the past, have become complicated. The Court, *sua sponte*, asked parties to re-brief the Reconsideration of the Motion to Dismiss based on *forum non conveniens*, and oral arguments were heard on October 7, 2005.

### II. Standard of law—*Forum Non Conveniens*

At its discretion, a court may dismiss a case for *forum non conveniens* "when trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of consideration affecting the court's own administrative and legal problems." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Furthermore, "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court and where the plaintiff is unable to aver any specific reasons of convenience supporting its choice." *Id.*

▮ In a motion to dismiss for *forum non conveniens,* the movant must show that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Million Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir.2001). The above factors are balanced with the court looking at the advantages and the disadvantages of each forum and with no one factor controlling. *See Warter v. Boston Securities, S.A.,* 380 F.Supp.2d 1299, 1306 (S.D.Fla.2004). When analyzing the private and public factors, however, the private factors are considered first. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1100 (11th Cir.2004). If the private factors are found to be "equipoise or near equipoise" then the Court will turn to the public factors to tip the balance. *Id.*

### III. Analysis

### A. Deference to Plaintiffs' Choices of Forum

▮ In a *forum non conveniens* inquiry, courts show deference to a plaintiff's choice of forum. *See SME Racks, Inc.,* 382 F.3d at 1101 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). This presumption for the plaintiff's choice is strongest when the plaintiff is a United States citizen, resident, or corporation. *Id.* In fact, a material injustice must manifest before a court can deny a United States citizen access to a United States court. *Id.* A foreign plaintiff's choice of forum, however, is a weaker presumption and receives far less deference. *See Leon v. Million Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir.2001); *see also In re Air Crash Over Taiwan Straits on May 25, 2002,* 331 F.Supp.2d 1176, 1190 (C.D.Cal.2004) (holding that "because foreign plaintiffs typically have fewer contacts

with the forum," it is likely "that they have chosen it for some reason other than convenience").

In this case, the members of the King family are the only plaintiffs who are United States citizens. All other plaintiffs are from European countries. Therefore, in the following *forum non conveniens* analysis, the King Plaintiffs' choice of forum will receive a high level of deference and a presumption of convenience. All other foreign plaintiffs' choices, however, will receive less deference because it is likely that their choice was made "for some reason other than convenience."

### B. An Adequate Forum

The first question the Court must answer is whether the alternative forum, an Italian court in this case, is available and adequate. At the time of the Court's initial order regarding *forum non conveniens,* the parties agreed that Italy provided an available and adequate forum. Now, however, Plaintiffs dispute the adequacy of an Italian forum under Defendant's version of Italian law.

▮ "An adequate forum need not be a perfect forum;" however, the forum must afford a satisfactory remedy. *Satz v. McDonnell Douglas Corp.,* 244 F.3d 1279, 1283 (11th Cir.2001); *see also Warter,* 380 F.Supp.2d at 1307 (holding that an alternative forum is inadequate if the remedy it affords is "clearly unsatisfactory" or is "essentially no remedy at all"). A forum is adequate even though it provides a remedy that would be substantially less than the remedy in the United States. *See Sigalas v. Lido Maritime, Inc.,* 776 F.2d 1512, 1519 (11th Cir.1985); *see also Pain v. United Technologies Corp.,* 637 F.2d 775, 794 (D.C.Cir.1980) (holding that "the comparative amount of recovery obtainable in two alternative forums has never been considered a factor relevant to the *forum non conveniens* inquiry").

■ Furthermore, an adequate forum is usually found when "the defendant is amenable to process in that other forum." *Satz,* 244 F.3d at 1283. Differences in law and procedure do not make the forum inadequate. For example, the ability of a plaintiff to hire an attorney on a contingency basis in the alternative forum is not considered. *See Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1430 (11th Cir.1996) (holding that if the availability of a contingency fee arrangement was given substantial weight, "then a case could almost never be dismissed because contingency fees are not allowed in most forums"). Also not considered is the fear of delay in foreign courts. *See Satz,* 244 F.3d at 1283.

In this case, Defendant is willing to submit to jurisdiction in Italy and is amenable to process in Italy. Therefore, Italy provides an adequate forum. Plaintiffs argue that Defendant's claim that Italian law provides no relief to Plaintiffs precludes Defendant from arguing that Italy is an adequate forum. Defendant's claim, however, has yet to be decided and, at any rate, can be decided best by an Italian court. Italy is an adequate forum. Italian courts have many times addressed tort liability and damages in airplane crash cases and many times produced satisfactory remedies.

## C. Private and Public Interest Factors

■ The Supreme Court has outlined a number of factors for courts to consider in a *forum non conveniens* determination. These factors, however, are not exhaustive or dispositive and the Court is free to be flexible in responding to cases as they are presented. *See Sigalas,* 776 F.2d at 1519. The private interest factors include (1) ease of access to sources of proof and evidence, (2) availability and costs of obtaining willing and unwilling witnesses, and (3) "all other practical problems that make the trial of the case easy, expeditious and inexpensive." *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839. If the private interest factors are at equipoise, the Court will also consider the following public interest factors: "(1) the sovereigns' interests in deciding the dispute, (2) the administrative burdens posed by trial, and (3) the need to apply foreign law." *Warter,* 380 F.Supp.2d at 1314 (quoting *Satz,* 244 F.3d at 1284).

### 1. Private Factors

The analysis of private factors begins with the ease of access to evidence and availability of witnesses. The Court will first identify the elements of a plaintiff's causes of action and then determine the location of the evidence necessary to prove and disprove each element. The location of much of the evidence in this case is Italy. Although the Court's initial order emphasized the importance of the evidence already gathered, the depositions already taken, and the crash reports already translated, the Court failed to mention Defendant's need to gather evidence on the tort element of causation. Defendant disputes causation based on intervening factors, the evidence of which can only come from Italian witnesses, such as individuals working with air traffic control at the Linate airport.

Additionally and more importantly, at the time of the Court's initial order, the Court assumed that only one trial on liability for all Plaintiffs would be necessary. However, it is apparent that the liability issues differ among Plaintiffs because not all Plaintiffs have signed the same release form in settling with the other potentially liable parties in Italy. The damages will also differ because under Italian law, each Plaintiff is entitled to only the support which she was actually receiving from the decedent. As the case now stands, the lack of commonalities among the Plaintiffs and the additional effort that would have

to be exerted by the Court to deal with each Plaintiff individually fall under the "practical problems" factor listed in *Gilbert*. The process will no longer be expeditious and inexpensive. For example, with regard to the foreign plaintiffs, most of the discovery has yet to begin and all evidence necessary to determine liability and damages is located in Europe. The Court does note, however, that with regard to the King Plaintiffs, much if not all of the evidence has already been gathered. Additionally, the King evidence on damages is likely located in the United States.

A further "practical problem" exists in that some plaintiffs have already litigated and continue to litigate a similar suit in Italy concerning the Linate crash. In its initial order, the Court held that it would retain jurisdiction of all cases in order to avoid parallel litigation in other courts. However, this reason has been undermined by fact that suits are ongoing on these issues in the Court of Milan. Additionally, because Defendant Cessna is willing to submit to jurisdiction in Italy, the Court of Milan is the only forum where Plaintiffs will be able to resolve all of their claims in a single proceeding, which would be the most expeditious and inexpensive way to resolve the case.

### 2. Public Factors

The public factors mentioned by the Supreme Court include each forum's interest in hearing the case, the administrative burdens placed on this Court in hearing the case, and the need to apply foreign law. In the Court's initial order denying the motion to dismiss, the Court recognized that both the United States and Italy have strong interests in deterring negligent conduct. The Court reasoned that

the United States had a greater interest in hearing the case because Italy had already settled its claims and filed criminal charges in regard to the Linate crash. Now, however, the Court has been told that claims are ongoing in Italy. Thus, Italy retains its interest in resolving this case, especially since the tragic event occurred on Italian land. The Court's order also noted that this case may be resolved more quickly in the United States. This conclusion is no longer certain. Here, the Court will potentially have to try all 70 Plaintiffs individually on both the liability and damages issues.[1] This prospect places a heavy burden on the Court's limited resources and uses United States tax dollars and juries to try a case that resolves the disputes of European Plaintiffs in a United States forum.

In addition to these concerns, the public interest factors include "the need to apply foreign law." *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 937 (11th Cir.2005). The Eleventh Circuit has repeatedly held that "the need to resolve and apply foreign law should 'point the trial court towards dismissal.'" *Sigalas*, 776 F.2d at 1519 (quoting *Piper*, 454 U.S. at 260, 102 S.Ct. 252); *see also Proyectos Orchimex de Costa Rica, S.A. v. E.I. duPont de Nemours & Co.*, 896 F.Supp. 1197, 1204 (M.D.Fla.1995) ("even the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on *forum non conveniens* grounds"). Dismissal is warranted so that events occurring on foreign land are adjudicated by foreign courts, especially where the foreign court has already adjudicated similar issues. *See Ford*, 319 F.3d at 1310; *see also Piper*, 454 U.S. at 260, 102 S.Ct. 252 (holding that there is "a local interest

---

1. Plaintiffs' counsel suggests that in airplane crash cases, only a few "representative" Plaintiffs proceed to trial. Furthermore, the releases signed by the Plaintiffs could be grouped. Thus, it is highly unlikely that the Court would actually try 70 cases on the same accident. The Court acknowledges counsel's experience in these types of cases, but must still make a ruling that is devoid of speculations.

in having localized controversies decided at home"). Furthermore, the Supreme Court has held that courts are better off applying the laws with which they are familiar. *See Piper,* 454 U.S. at 260, 102 S.Ct. 252; *see also Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1430 (11th Cir.1996) (holding that since French substantive law applied, it would be "far better that the case be tried in France by one or more jurists" who are familiar with French law). In *Ford,* the Eleventh Circuit explained, "[T]ort law is rife with nuances that are not consistently found throughout all jurisdictions. Therefore, the foreign country is ordinarily the best place to litigate a dispute revolving around a foreign rule of decision." *Ford v. Brown,* 319 F.3d 1302, 1310, n. 24 (11th Cir.2003).

The nuances of foreign tort law are especially obvious in this case as the Court and the parties witnessed at the two-day Italian law hearing. In the Court's initial order denying the motion to dismiss, the Court held that the parties agreed that the Italian "legal issues [were] fairly simple." However, this is no longer the case. At the Italian law hearing, the parties' Italian law experts interpreted the same Italian codes and cases in opposing ways. Additionally, now the Court must potentially decide nine different issues of Italian law. The numerous Italian law issues that will need to be decided, and the Italian interest in ongoing litigation with some Plaintiffs "point the trial court towards dismissal."

If this case is dismissed, Plaintiffs will still have the opportunity to litigate in Italy. At oral argument Plaintiffs' counsel made an impassioned plea to consider the plight of the "widows and orphans" who have been waiting for justice from the airplane crash four years ago. The court is extremely sympathetic to anyone who has lost a loved one, even those who are not "widows and orphans," such as the first filed plaintiff Jack King, the father of the decedent, Jessica King. Nevertheless, courts in Italy also dispense justice and, in fact, have done so in this case already. We in the United States may differ with our friends in Europe on the amount of compensation due to victims of accidents, just as we apparently disagree on other important issues such as welfare, the degree of government intrusion in private businesses, the death penalty, *et cetera.* But just because we believe that our judicial system is better for us does not automatically open our courts to resolve these suits brought by 69 European plaintiffs claiming negligence resulting from an airplane crash occurring in Italy. The Court, in exercising its discretion, has balanced the various public and private interests already discussed. Therefore it is ordered that the claims of all European plaintiffs be dismissed so that they may pursue just compensation before Italy's courts where the litigation regarding this accident has been ongoing for years.

Plaintiffs' counsel are understandably disturbed that they have relied on this Court's initial denial of Defendant's motion to dismiss. It is true that the Court should have granted such motion earlier. Yet, a court's decision not to correct an error just compounds that error. Requirements that counsel seek redress at the trial level before arguing error on appeal exist to give a trial judge the opportunity to correct mistakes made by the Court. This Court avails itself of such opportunity, albeit later than it should have. A judge is bound to follow the law irrespective of any emotional pleas once that judge has recognized the law despite his own prior rulings to the contrary.[2]

---

2. After all, "a foolish consistency is the hobgoblin of small minds." (Ralph Waldo Emerson).

As this case now stands, it is clear that the Court of Milan in Italy would be a more convenient forum for the Plaintiffs and the Defendants. Further, the Court recognizes the deference given to United States Plaintiffs and their choice of a United States forum. Foreign plaintiffs, however, receive no such deference. Therefore, the Court deconsolidates the United States Plaintiffs (the King family) from the 69 other European Plaintiffs. The Court dismisses this case as to the European Plaintiffs for *forum non convenienes*. The King case, however, will remain in the United States because King is an American plaintiff who has selected a Florida forum and is thus entitled to a presumption of his choice of forum.

Additionally, the King Plaintiffs' case is stayed pending resolution of this case in Italian courts. The Court is bound to apply Italian law. The reluctance of the Court in applying Italian law is not due to its difficulty, but as to the apparent direct conflict in the experts' testimony. Because the King case will be stayed until the Italian courts have resolved the Italian law disputes as they relate to the 69 other plaintiffs, this Court will have the benefit of actual Italian court decisions that are related to this precise case, and there will not be any conflict in following Italian law. In fact, the King family has apparently litigated a civil suit against other European defendants in the Court of Milan seeking recovery for the same injuries that are the subject of this litigation. At oral argument, counsel for the Plaintiffs were unable to provide any details of the civil action alleged to have been prosecuted by Jack King as claimed by Defendant in footnote one, page 5, of the Memorandum in Support of Further Reconsideration of Cessna's Motion to Dismiss for *Forum Non Conveniens*. Therefore, the American Plaintiff who chose to proceed in an Italian court already, is not prejudiced if his case in an American court proceeds after the Italian court decides the same Plaintiff's suit over the same accident, albeit against other defendants. Staying the King trial will reduce the costs to both Plaintiffs and Defendant in litigating the issues of Italian law prior to disposition of any of the King family members suit against Cessna.

## IV. Conclusion

Based on the foregoing, Defendant's Motion for Reconsideration of the Order Denying Motion to Dismiss is GRANTED IN PART as to the 69 European Plaintiffs, and DENIED IN PART as to the American Plaintiffs, the King family. Furthermore, the King case will be stayed until the Italian courts have resolved the Italian law disputes as they relate to the other 69 Plaintiffs. This case will thus be removed from the trial calendar and placed in the civil suspense file. The parties must report in writing every twelve months on the progress of the litigation in Italy in order to reactivate this case after the issues of Italian law have been decided by Italian courts.