Leonidas Ortega TRUJILLO, Jaime Ortega Trujillo, and Luis Alberto Ortega Trujillo, Plaintiffs,

v.

BANCO CENTRAL DEL ECUADOR, an agency of the Government of Ecuador, Augusto Dela Torre, and Conover & Company Communications, Inc., a Massachusetts Corporation, Defendants.

Banco Central Del Ecuador, Counter-Plaintiff and Third-Party Plaintiff,

and

Banco Continental, S.A., and Banco Continental Overseas, N.V., Third-Party Plaintiffs,

v.

Leonidas Ortega Trujillo, Jaime Ortega Trujillo, and Luis Alberto Ortega Trujillo, Counter-Defendants and Third-Party Defendants,

and

Panamerican Bank a Florida Bank, Interbank Holding Corp., a Florida Corporation, Fabian Ortega Trujillo, Jorge Ortega Trujillo, Gustavo Ortega Trujillo, Maria Del Carmen Ortega De Velez, Angel Torres Noboa, Martin Costa March, Carlos Baquerizo Blum, Glen Goldhagen, Ansbacher (Bahamas) Ltd., a Bahamian company, and Nestor Cubillos, Third-Party Defendants.

No. 98–0373 Civ.

United States District Court, S.D. Florida.

Dec. 3, 1998.

Marlene Koch Silverman, Mark Paul Schnapp, Gary David Weinfeld, Michael James Rogal, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, Miami, FL, for plaintiffs.

Oscar A. Sanchez, Steven E.M. Hartz, Lida Rodriguez–Taseff, Jill Ann Cook, John F. O'Sullivan, Akerman Senterfitt & Eidson, Miami, FL, for Banco Central Del Ecuador, Augusto De La Torre, defendants.

David Franklin Geneson, Kara L. Cunningham, Katherine M. Ho, Hunton & Williams, Washington, DC, for Conover & Co., defendant.

Oscar A. Sanchez, Steven E.M. Hartz, Lida Rodriguez–Taseff, Jill Ann Cook, John F. O'Sullivan, Akerman Senterfitt & Eidson, Miami, FL, Lee C. Buchheit, Cleary Gottlieb Steen & Hamilton, New York City, for Third–party Plaintiffs.

Mark Paul Schnapp, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, Miami, FL, for Counter–Defendant.

Marlene Koch Silverman, Michael James Rogal, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, Miami, FL, Gerald Barry Wald, Murai Wald Biondo & Moreno, Miami, FL, for Leonidas Ortega Trujillo, Luis Alberto Ortega Trujillo, Leonidas Ortega Trujillo, Panamerican Bank, Interbank Holding Corp., Fabian Ortega Trujillo, Jorge Ortega Trujillo, Gustoavo Ortega Trujillo, Maria Del Carme Ortega De Velez, Third–party Defendants.

Marlene Koch Silverman, Mark Paul Schnapp, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, Miami, FL, for Angel Torres Noboa, Martin Costa March, Carlos Baquerizo Blum, Glenn Goldhagen, Nestor Cubillos, Third–party Defendants.

Laura Besvinick, Luca Roberto Bronzi, Davis Weber & Edwards, Miami, FL, Peter James Yanowitch, Miami, FL, for Ansbacher Bahamas Ltd., Third–party Defendant.

### *ORDER DISMISSING COUNTERCLAIM AND THIRD–PARTY COMPLAINT*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on three motions: 1) Plaintiffs' Motion To Dismiss The Counterclaim And Third–Party Complaint Of Banco Central Del Ecuador ("Banco Central") And Third–Party Complaint Of Banco Continental, S.A. ("Banco Continental") And Banco Continental Overseas, N.V. ("BCO"), filed August 10, 1998 ("First Motion"); 2) Motion of the Ortegas, Panamerican Bank ("Panamerican"), And Interbank Holdings Corp. ("Interbank") To Dismiss Counterclaim And Third Party Complaint, Or Alternatively, Motion To Stay And Accompanying Memorandum Of Law, filed August 10, 1998 ("Second Motion"); and 3) [Third–Party] Defendant Ansbacher (Bahamas) Ltd.'s ("Ansbacher") Motion To Dismiss Or Stay, filed August 10, 1998 ("Third Motion"). The Counter–Plaintiffs filed a Response to the Ansbacher Motion on August 27, 1998, and a combined Response to the First and Second Motions on August 28, 1998. The Court held a hearing over these motions on October 28, 1998.

### *Summary of Facts*

For these purposes, all facts alleged in the Counter–Claim and Third–Party Complaint ("Counterclaim") are accepted as true, *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). As alleged in the Counterclaim, these facts are as follows:

### 1. The Counter–Plaintiffs

Banco Central is the central monetary authority of Ecuador, and is a foreign bank as defined by the International Banking Act of 1978, 12 U.S.C. § 3101(7) ("the IBA"). Banco Continental is an Ecuadorian bank currently owned by Banco Central, and a foreign bank as defined by the IBA. BCO is a bank incorporated under the laws of the Netherlands Antilles, is a foreign bank as defined by the IBA, and is a wholly-owned subsidiary of Banco Continental.

### 2. The Counter–Defendants

Leonidas Ortega Trujillo, Luis Alberto Ortega Trujillo, Jaime Ortega Trujillo, Fabian Ortega Trujillo, Jorge Ortega Trujillo, Gustavo Ortega Trujillo, and Maria del Carmen Ortega de Velez (collectively, "the Ortegas") are members of a prominent Ecuadorian family that holds numerous business and banking interests.

Panamerican, a federally-insured commercial bank chartered and doing business in Florida, is owned and controlled by Interbank, a Florida corporation. The Ortegas own Interbank. Ansbacher is a Bahamian company which has acted as trustee and officer of the InterAmerican Asset Management Fund, Ltd. ("LAMF"). The Ortegas do not own Ansbacher.

Angel Torres Noboa was, at all material times, General Manager of Banco Continental. Martin Costa March was, at all material times, General Manager of Panamerican Bank Services PAF, S.A. ("PAF"), and had control over certain of Panamerican's banking operations. Carlos Baquerizo Blum was, at all material times, Vice President of Conticorp, S.A. ("Conticorp") and Casa de Valores Continental Contivalores, S.A. ("Contivalores"), two companies controlled by the Ortegas. Glen Goldhagen is a longtime employee of the Ortegas, and has served as CEO of Panamerican. Nestor Cubillos was, at all material times, managing officer of BCO and an officer of Banco Continental.

### 3. The Counterclaim

Due to the complexity of this matter, the Court will provide only an abbreviated summary of the Counterclaim at the outset.[1] The basic allegations are simple. The Counter–Plaintiffs have accused the Ortegas of defrauding them of over $150,000,000, by means of Ortega-controlled or influenced banks and businesses. To this end, the Counter–Plaintiffs have pursued several separate actions against the Ortegas and their alleged co-conspirators.

Originally, the Counter–Plaintiff Banks selected the Commonwealth of the Bahamas as their forum of choice in which to sue the Trujillos on their $150,000,000 fraud claim. That civil action, commenced by the Counter–Plaintiffs in February 1997, is still pending with a trial date reportedly set.

The Southern District of Florida's first exposure to the case came over a year later, when Leonidas Ortega Trujillo, Jaime Ortega Trujillo and Luis Alberto Ortega Trujillo filed defamation charges in this Court against Banco Central, a former employee of Banco Central, and Banco Central's public relations firm. Counter–Plaintiffs' charges against the Ortegas in this District were brought as counter-claims to that suit, which has been dismissed in part and is currently pending.

Banco Central's allegations have prompted additional investigations of the Ortegas by the Ecuadorian government, a criminal action in Ecuador, and various related Ecuadorian civil and administrative proceedings.[2] The Federal Reserve Bank of the United States has also investigated the matter.[3] Again, both the Bahamian civil proceedings and the Ecuadorian criminal proceedings predate the proceedings in this Court by well over a year, and are currently pending.

---

1. Combined, the introduction and fact summary in the Counterclaim are 105 paragraphs. The Court will endeavor to summarize pertinent allegations as fairly as possible.

2. The Ecuadorian proceedings were brought to the attention of this Court by the Counter–Defendants, and are not mentioned in the Counterclaim.

3. The investigation by the United States is detailed in the original Complaint in this case.

The various motions to dismiss argue numerous grounds for dismissal.[4] Of these, the Court need only address the argument that the Counterclaim must be dismissed pursuant to the doctrine of Forum Non Conveniens.

### Legal Standards

#### 1. Dismissal

Dismissal is justified only when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 810, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980)). The complaint at issue should be construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *See Hishon*, 467 U.S. at 73, 104 S.Ct. 2229. Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

#### 2. Forum Non Conveniens

"The forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). To dismiss on the basis of forum non conveniens, a court must find that an adequate alternative forum is available, and that relevant private and public interest factors weigh in favor of dismissal. *See Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1429 (11th Cir.1996).

### Analysis

Based on the following review of the relevant private and public interest factors, the Court finds that the issues raised by the Counterclaim will be properly and adequately addressed elsewhere.

#### 1. Public Interest Analysis

Factors this Court may consider in the course of public interest analysis for forum non conveniens issues include judicial economy, local interest in having the issues adjudicated in this jurisdiction, and choice of law matters. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *see also Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *Sibaja v. Dow Chem. Co.*, 757 F.2d 1215, 1218 (11th Cir.1985). The Court concludes that despite the clear interest it has in preventing fraud such as that alleged by the Counter–Plaintiffs, the courts of Ecuador and the Bahamas have substantially greater interests in the issues addressed by the Counterclaim.

The Court's main interest in adjudicating this case stems from the Counterclaim's allegations under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961 *et seq.*, Counts I, II, III and IV of the Counterclaim allege violations of 18 U.S.C.A. § 1962. That statute reads, in relevant part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt ... to use or invest, directly or indirectly, any part of such income, or [its] proceeds ... in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce ...

---

4. The First Motion moves for dismissal pursuant to Rules 9(b), 12(b)(1) and 12(6) of the Federal Rules of Civil Procedure, for lack of standing under RICO, for failure to plead fraudulent conspiracy with particularly, and for improper reference to foreign law.

The Second Motion moves for dismissal for improper third-party practice, insufficient service of process, lack of personal jurisdiction, and forum non conveniens.

The Third Motion moves for dismissal pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, and for forum non conveniens.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C.A. § 1962 (West Supp.1984).

Counter–Plaintiffs appear to have stated a claim under 18 U.S.C. § 1962. The Counterclaim clearly alleges that the Ortegas, through enterprises (banks and other businesses) engaged in interstate and international commerce, defrauded Banco Central. The Court is compelled, however, to review the nature of its interest in such cases.

District courts have jurisdiction over civil suits stemming from injuries incurred as a direct consequence of Section 1962 violations. Plaintiffs found to hold legitimate grievances are awarded treble damages and reasonable attorney's fees. *See* 18 U.S.C.A. § 1964(c); *see also Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.,* 140 F.3d 898, 906 (11th Cir.1998). To sustain such a claim, a civil plaintiff must demonstrate that his or her injuries are the direct result of racketeering activity (referred to as "predicate acts") falling under RICO's purview. *See* 18 U.S.C.A. §§ 1961(1), 1964(c); *see also Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Pelletier v. Zweifel,* 921 F.2d 1465, 1497 (11th Cir.1991) ("A plaintiff ... must show a causal

connection between his injury and a predicate act.").

In this case, the activity which Counter–Plaintiffs cite as predicate to their injury (and, as such, their RICO action) is the Ortegas' alleged fraud of Banco Central. As noted by the Counter-plaintiffs, offenses against foreign nations occurring "in whole or in part in the United States," and involving "fraud or any scheme or attempt to defraud, by or against a foreign bank,"[5] are considered such "specialized unlawful activity" as constitute predicate acts. *See* 18 U.S.C.A. § 1956(c)(7)(B)(iii). At the hearing of October 28, 1998, counsel for the Counter–Plaintiffs argued:

> [This is a pure RICO case ... which, at its essence, involves the infiltration of a legitimate enterprise by people who were racketeers.
>
> ... This is precisely what RICO is designed to deal with, and is the purest RICO you can find ...
>
> ... And to make it even doubly clear, Congress expressly contemplated the application of RICO in this very case. Specifically, if you look at 18 U.S.C. Section 1956(c)(7), you will see that among the specified unlawful activities includes the activity of foreign criminal financial transactions which occur in whole or in part in the U.S., which involve any scheme to defraud or to attempt to defraud a foreign bank.
>
> Congress knew that this would be a RICO predicate and wanted our courts to respond to frauds on foreign banks.

Tr. of Hr'g., October 28, 1998 at 49–50. This assessment is accurate, but only to a degree.

This Court has a clearly defined interest in acting against foreign bank fraud. However, Congress articulated this interest in the context of its drug interdiction efforts. Congress initially enacted 18 U.S.C. § 1956(c)(7)

---

**5.** The bank fraud statute provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. 18 U.S.C. § 1344 (West Supp.1993). "Foreign bank" is defined by the IBA.

as the Money Laundering Crimes Act of 1986 ("MCLA"), Subtitle H to the Anti–Drug Abuse Act of 1986. As envisioned by its authors, the MLCA was intended to prevent organized crime from concealing the proceeds of drug trafficking by converting "cash into manageable form." 132 CONG.REC. S9626–04 (statements of Sen. Thurmond); *id.* (statements of Sen. DeConcini, Sen. Biden). To the extent that the authors of the Act anticipated its application to money laundering outside the realm of drug traffic and organized crime, such expectation was limited to efforts against American corporations that bribed foreign officials in the pursuit of lucrative business contracts. *See id.* (statement of Sen. DeConcini). Indeed, as originally passed by the Senate, the bill made no mention at all of foreign bank fraud. Commentary regarding offenses against foreign nations was only made in reference to schemes "involving the manufacture, importation, sale, or distribution of a controlled substance[.]" Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207 (codified as 18 U.S.C. § 1956).[6]

Amendment to the MLCA came six years after its initial enactment. The provision that eventually became 18 U.S.C.A. § 1956(c)(7)(B)(iii) was first proposed as an amendment to the Comprehensive Deposit Insurance Reform and Taxpayer Protection Act. 137 CONG.REC. S16640 (D'Amato Amendment No. 1337). In the analysis provided by the amendment's author, foreign bank fraud is only mentioned in the context of more violent crimes. *Id.* At S16646 (statement of Sen. D'Amato) ("The proposal would expand ... money laundering and civil forfeiture provisions ... so that they would also include the proceeds of foreign kidnapings, robberies and extortions and fraud offenses committed by or against foreign banks. The purpose is to make it more difficult for fraud schemes and other violent offenders an perpetrators of international bank fraud schemes to use the United States as a haven for the profit from their crimes."). Subsequent comments by House members confirm that the focus of the provision's backers was on the connection between money laundering and drug trafficking. *See* 138 CONG.REC. H9802–01 (statement of Rep. Annunzio) ("Money laundering is a crime which makes the illegal drug business profitable. The vast amount of cash generated by drug dealers is actually a liability. Without a place to launder cash, drug dealers would be left with a vast pile of worthless paper. To profit from their murderous business they must be able to convert the cash into bank credits which can be concealed easily and transferred rapidly."). *See id.* (statement of Rep. Leach) ("This bill combats drug traffickers by attacking their ability to launder money ...".).

Ultimately, on October 28, 1992, the definition of "specified unlawful activity" under section 1956 was amended to include the fraud, or attempted fraud, of a foreign bank. *See* Pub.L. No. 102–550 § 1536 (codified as 18 U.S.C. § 1956(c)(7)). As before, application of section 1956 was limited to instances in which "the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States[.]" 18 U.S.C. § 1956(f)(1).

While federal courts therefore have a statutorily-defined interest in acting against schemes to defraud foreign banks (at least in instances where the proceeds of such schemes are funneled at least in part into the United States), it is noteworthy for our purposes that the Congressional emphasis in defining this interest was primarily over

---

**6.** The report of the Senate Judiciary Committee substantiates this reading. In its report as to the MLCA, the Committee specifically noted that, "in order to prevent international jurisdictional conflicts, this section [1956] also clarifies that a specified offense must occur in whole or in part within the United States or be directed at the U.S. Government." The Committee proceeded to reserve expansive readings of the MLCA for money laundering related to drug transactions. "It is not the Committee's intention," the report continued, "to impose a duty on foreign citizens operating wholly outside of the United States to become aware of U.S. laws." Section (f) avoids this by limiting extraterritorial jurisdiction over the offense to situations in which the interests of the United States are involved ... thus ensuring that Federal extraterritorial jurisdiction is confined to *significant cases*. SENATE COMM. ON THE JUDICIARY, MONEY LAUNDERING CRIMES ACT OF 1986, S.REP. No. 99–433, at 14 (emphasis added).

drug trafficking, an element absent here.[7] Nonetheless, the Court does have an interest in this litigation.

That interest, however, is substantially outweighed by others. As alleged in the Counterclaim, the Ortegas laundered over ten million dollars in the United States. This sum, however large, is insignificant when compared with the entire sum which the Ortegas are alleged to have stolen from Banco Central (over $150,000,000). The Court's interest in this case is similarly insignificant when compared with the interests of Ecuador and the Bahamas, each of which is alleged to have played a far greater role (and in the case of Ecuador, incurred an immensely greater degree of suffering) than that of the United States. The Counter–Plaintiff's argument that the people of Miami have a "very important interest" in this case, one which outweighs that of the citizens of either Ecuador (from whom the money allegedly was stolen) or the Bahamas (where significant parts of the scheme are alleged to have taken place, and where adjudication of this matter commenced over a year prior to the filing of the Counterclaim in this Court), is specious at best. *See* Tr. Of H'rg., October 28, 1998, at 65.

### 2. Private Interest Factors

Irrespective of the outcome of the public interest balancing test, it is evident that this case belongs elsewhere. Dismissal on forum non conveniens grounds is appropriate when trial in the plaintiff's chosen forum would impose a heavy burden on the defendant or the court, *see Gulf Oil* 330 U.S. at 508, 67 S.Ct. 839 (1947), and when an adequate alternative forum is available. *See Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. 252. Additional factors the Court must take into account in the course of its private interest analysis include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and

the cost of obtaining attendance of willing, witnesses ... and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil,* 330 U.S. at 507, 67 S.Ct. 839; *see also Republic of Panama v. BCCI Holdings (Luxembourg), S.A.,* 119 F.3d 935, 952 (11th Cir.1997); *La Seguridad v. Transytur Line,* 707 F.2d 1304, 1307 (11th Cir.1983).

The issue of inconvenience, while not dispositive, is certainly relevant. The Court notes with interest the uncontroverted assertion by Counter–Plaintiffs that the case, if tried here, would pose serious logistical problems for this Court:

> ... [I]nterest factors clearly dictate that this case should not be here.
>
> The application of Ecuadorian law and perhaps Bahamian law, the fact that numerous witnesses reside in Ecuador, and that that country does not have a procedure to compel witnesses to attend depositions either there or here ... The documents are in Spanish. The criminal record alone is over 10,000 single spaced pages. It's totally in Spanish.
>
> ... Of the witnesses that we listed on our list, 55 of those individuals, not including our clients, reside outside the United States.
>
> On the list [of witnesses] submitted by [Counter–Plaintiffs] ... 22 out of the 45 on their list are outside this Court's jurisdiction.

Record of October 28, 1998 Hearing at 46–47. It is evident that, in addition to such complications, this Court will be called upon to rule on matters of Ecuadorian law. (*See* Counter–Defendants' Notice Of Intent To Raise Issue Concerning The Law Of A Foreign Country, filed September 10, 1998.) The Court is, therefore, faced with the possibility of trying a case in which at least 77 potential witnesses reside outside its jurisdiction, necessitating due service to most of them in a

---

**7.** The Court acknowledges that application of RICO money laundering statutes has been radically expanded since Congressional enactment, and now are routinely applied in cases unrelated to drug trafficking. *See* Larry D. Thompson and Elizabeth Barry Johnson, *Money Laundering: Business Beware,* 44 Ala.L.Rev. 703 (1993); G. Richard Strafer, *Money Laundering: The Crime*

*of the 90's,* 27 Am.Crim.L.Rev. 149 (1989); Elkan Abramowitz, *Money Laundering: The New RICO?,* N.Y.L.J., Sept. 1, 1992, at 3. However, insofar as the preceding analysis was effectuated purely for purposes of forum non conveniens analysis, such expansive application does not alter the Court's ultimate conclusion that the interest of outside jurisdictions outweighs its own.

country where no mechanism to compel deposition exists, travel expenses, and the translation from Spanish of hundreds of hours of testimony and thousands of pages of documentation. The relative inconvenience of this forum is evident.

The question remains as to whether or not an adequate alternative forum exists. A defendant demonstrates that such a forum is available by showing that they are " 'amenable to process' in the other jurisdiction." *Piper Aircraft,* 454 U.S. at 254 n. 22, 102 S.Ct. 252 (quoting *Gulf Oil,* 330 U.S. at 507, 67 S.Ct. 839). In instances where the proposed jurisdiction can offer no satisfactory remedy, a district court may rule that it is not an acceptable alternative, regardless of whether or not the defendant shows that it is amenable to process there. *See id.* Differences in law unfavorable to either party, however, are not grounds in and of themselves to demark alternative jurisdictions as unsatisfactory; the remedy available in the alternative forum must be "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft,* 454 U.S. at 254, 102 S.Ct. 252. The Eleventh Circuit has explicitly held that "a plaintiff's inability to assert a RICO claim in the foreign forum does not preclude forum non conveniens dismissal" in favor of that forum, provided that the forum allows an appropriate, alternative remedy for the acts alleged. *Republic of Panama v. BCCI,* 119 F.3d at 952.

In choosing to sue in Bahamas over a year before the filing of the Counterclaim in this Court, Counter–Plaintiffs effectively conceded the issue. A comparison of the Bahamian Statement of Claim to the Counterclaim before this Court illustrates the Counterclaim's duplicative nature. Each complaint details a scheme in which the Ortegas directed banks under their influence to defraud Banco Central. Each acknowledges the role played by Panamerican in the alleged scheme, and therefore the scheme's connection to the United States. Each alleges fraudulent loans of approximately $150,000,-000 made to Ortega-run enterprises. Each demands restitution in the amount of $150,-000,000, plus damages.

Significantly, all of the Counter–Plaintiffs are listed as parties to the Bahamian lawsuit. The Counter–Plaintiffs' argument that the Bahamian suit was prematurely and inappropriately commenced is of no moment, as it speaks to Counter–Plaintiffs' own judgment, rather than this Court's interest in the case. This Court also rejects the argument that the Bahamas are inadequate because Counter–Plaintiffs have thus far been unable to expand their case there to include all of the parties named in the Counterclaim. The decision whether or not to allow inclusion of such parties in the Bahamian lawsuit rests with the courts of the Bahamas, not our own.

The Court is mindful of the deference traditionally afforded to a plaintiff's choice of forum. Such deference, however, is less compelling in this instance than is normally the case. First, the Counter–Plaintiffs' original choice of forum was the *Bahamas,* not the Southern District of Florida. As above, the Bahamian proceedings pre-date these proceedings by well over a year. Second, all of the Counter–Plaintiffs are foreign. "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. [That] presumption applies with less force when the plaintiff or real parties in interest are foreign." *Piper Aircraft,* 454 U.S. at 255, 102 S.Ct. 252. In cases involving foreign defendants, a determination that trial in the plaintiff's chosen forum would be burdensome is sufficient to support dismissal on grounds of forum non conveniens. *See id.* at 259, 102 S.Ct. 252. Finally, the Supreme Court has suggested that district courts should give little deference to a foreign plaintiff's choice of forum when suing in a U.S. court. *See Piper v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *see also* Daniel J. Dorward, *The Forum Non Conveniens Doctrine and the Judicial Protection Of Multinational Corporations From Forum Shopping Plaintiffs,* 19 U.PA.J. INT'L ECON.L. 141, 160–61 (1997).

In short, taken in conjunction with the pending actions in Ecuador, the Bahamian action is a more than sufficient means of addressing the relevant issues in this case.

### Conclusion

In light of the great weight of public and private interest factors, including the numerous ongoing proceedings in Ecuador and the Bahamas that address the same issues of fact raised by the Counterclaim, the Court can see no justification for the great effort and expense that would be necessitated were the issues to be re-litigated in the Southern District of Florida. Were Counter–Plaintiffs bereft of any other means by which (or fora in which) to pursue their claims, the Court might have decided differently. As it stands, however, an exercise of jurisdiction by this Court over the issues raised by the Counterclaim would be inappropriate.

Accordingly, after a careful review of the record and the Court being fully advised, it is

ORDERED and ADJUDGED that the Counterclaim and Third–Party Complaint of Banco Central del Ecuador and Third–Party Complaint of Banco Continental, S.A. and Banco Continental Overseas, N.V. be, and the same are hereby, DISMISSED. All pending motions pertaining to the dismissed Counterclaim and Third–Party Complaint are hereby DENIED as moot. It is further

ORDERED and ADJUDGED that the stay of Motion Practice and Discovery established by this Court's Order of November 4, 1998 be, and the same is hereby, SET ASIDE.