**ISRAEL DISCOUNT BANK LIMITED, Plaintiff,**

v.

**Moshe SCHAPP, Defendant.**

**No. CV 06–00106 DDP (CWx).**

United States District Court, C.D. California.

Aug. 2, 2007.

Brian I. Hamblet, Ronald F. Frank, Bannan Green Frank and Terzian, Los Angeles, CA, Kevin C. McCann, Sean Unger, Paul Hastings Janofsky & Walker, San Francisco, CA, for Plaintiff.

Amy Semmel, Mona D. Miller, Paul M. Kelley, Donfeld Kelley & Rollman, Los Angeles, CA, for Defendant.

## AMENDED ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS ON GROUND OF FORUM NON CONVENIENS; DECLINING TO RULE ON OTHER MOTIONS

PREGERSON, District Judge.

[Plaintiff's forum non conveniens and rule 12 motions filed on 02/09/07; Plaintiff's international comity and 12(b)(1) motion, and Defendant's motion to remand filed on 02/22/07]

This matter comes before the Court[1] on the plaintiff and counterclaim defen-

---

1. This Order hereby amends pages 1, 2, and 22 of the Court's 06/28/07 Order (Dock. No.

dant Israel Discount Bank, Ltd.'s motion to dismiss on the ground of forum non conveniens, motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground of foreign sovereign immunity, motion to dismiss pursuant to Federal Rule 12(b)(3) on the ground of a forum selection clause, motion to dismiss on the ground of international comity, and defendant and counter-claimant Moshe Schnapp's motion to remand this case to state court. After reviewing the materials submitted by the parties and considering the arguments therein, the Court grants the plaintiff's motion to dismiss defendant's counterclaim on the ground of forum non conveniens. This order of dismissal will qualify as the entry of judgment as to defendant's counterclaim. The Court further denies defendant's motion to remand as moot, and remands the plaintiff's collection-proceeding to state court for further proceedings.

## I. BACKGROUND

The plaintiff and counterclaim defendant, Israel Discount Bank Limited ("IDB"), is a corporation organized under the laws of Israel with its principal place of business in Tel Aviv, Israel.[2] The defendant and counter-claimant, Moshe Schnapp ("Schnapp") is an Israeli citizen currently residing in California. On September 1, 2005, IDB filed a Complaint for Recognition of Foreign Judgment in state court against the defendant, Moshe Schnapp ("Schnapp") to enforce two Israeli judgments IDB won against Schnapp in Israel. The judgments in the two underlying Israeli actions were entered in the Haifa

District court (Civil Case No. 600/99 (hereinafter the "Haifa Action")), the Honorable Justice Oded Gershon presiding, on January 31, 2001, and in the Tel Aviv District Court (Civil Case No.2051/99 (the "Tel Aviv Action")), the Honorable Drora Pilpel presiding, on January 9, 2001. On December 8, 2005, the defendant and counter-claimant filed a counterclaim in state court asserting various claims for breach of contract, fraud, and negligent misrepresentation.

### A. Statement of the Facts

Unless otherwise noted, the facts of the case are not in dispute. IDB was established in 1935 in Tel Aviv. IDB is involved in retail banking, investment banking, and capital market activities. Schnapp opened an account at the Ramat Shaul branch of IDB (Account No. 605255). In opening this account, Schnapp agreed to the terms and conditions as set forth in the Private/Current Account Condition ("Account Agreement"). See Def's Ex. 4. Opening an account is a prerequisite to doing business with IDB, and the terms of the Account Agreement control all other banking relationships between the parties. The Account Agreement designates Israeli law as controlling and designates Israel as the exclusive forum for suits arising from the relationship.

In or around May 1998, Schnapp and a colleague, Eli Aran, were involved in efforts to purchase a company in Israel known as Granit Harchamel Investments, Ltd. ("Granit"). At that time Schnapp contacted IDB and indicated that he was

---

91).

**2.** The parties dispute IDB's status as a foreign sovereign as of the date Schnapp filed his Complaint in state court, December 8, 2005. See Court's March 23, 2007 Order Re Scope of Discovery. IDB alleges that on December 8, 2005, the date on which Schnapp filed his

cross-complaint against IDB, the majority owner of IDB was the state of Israel. Schnapp contests this issue, arguing that IDB was not majority-owned by the state of Israel because it was privately owned as of that date. However, as discussed below, the Court need not resolve this question in addressing the parties' present motions.

competing to purchase Granit. According to IDB, Schnapp stated he had submitted a $168,750,000 offer to purchase Granit, and asked whether IDB would issue him credit up to $170 million dollars to finance the transaction. According to IDB, negotiations ensued but no agreement was ever reached.

Schnapp claims that on May 21, 1998, Simcha Pops, on behalf of Schnapp, negotiated an agreement with IDB to fund his purchase of Granit. IDB disputes that any agreement was ever reached. IDB alleges that one week and a half later, on June 1, 1998, a meeting was held at IDB's Tel Aviv office between Schnapp and Meir Belisha, a representative of IDB. At the meeting, Schnapp stated that his proposal to acquire the controlling interest in Granit had reached the next stage of tender, and that he was required to provide to Mashav Initiating and Development Ltd. (Granit's parent company) ("Mashav") a bank guarantee of $4 million dollars.

According to IDB, Belisha made clear to Schnapp that no agreement between IDB and Schnapp had been reached regarding the financing of the proposed Granit transaction, and that IDB's agreement to provide the guarantee letter for the $4 million to Schnapp did not reflect any agreement as to the $170 million dollar credit facility he had requested. IDB also allegedly stated at that time that it would be willing to issue the guarantee letter only if Schnapp provided collateral (shares in Genesis owned by Schnapp's company), such that if IDB were ever required to fund the guarantee, Schnapp's account would be indebted for the amount paid, and the collateral would serve as security.

On June 17, 1998, Schnapp and his partner, Eli Aran, were announced as the winning bidders for the controlling interest in Granit with 14 days to close the transaction. Schnapp, however, proved unable to provide financing to complete the purchase of Granit's shares, and on July 26, 1998, Mashav demanded payment of the guarantee from IDB. IDB thereafter demanded from Schnapp the amount required for the payment of the guarantee. On August 25, 1998, when IDB did not receive payment from Schnapp, it paid Mashav the $4 million dollars and debited Schnapp's account (No. 605255) in the same amount.

After negotiations regarding the money owed IDB by Schnapp failed, IDB filed suit in Israel against Schnapp demanding that he repay the $4 million dollars. On September 1, 1998, IDB filed a summary proceeding against Schnapp in the Haifa District Court concerning repayment of the $4 million that IDB had apparently paid on the guarantee. Soon after the claim was filed, the parties reached a settlement agreement. The settlement agreement, signed September 2, 1998, required Schnapp to pay $1 million dollars in cash and $3 million dollars in the form of two loans from IDB to Schnapp to be repaid over 24 months (the sum total offsetting the debit in his account). The additional loan necessitated additional collateral, and IDB required Schnapp to repledge the stocks he had previously used as collateral for the guarantee letter.

As part of the settlement agreement, Schnapp also agreed to and signed a waiver, which (translated into English) provides:

> I do not have and will not have in the future any contention and/or claim and/or cause of action and/or demand against you and/or against your management and/or against any of your employees, and I hereby expressly waive, in everything and only everything connected with and related to my debt as stated in the agreement under reference, and inter alia, the issuance of your aforesaid guarantee and its payment in a manner by which I perceive the whole matter as

arranged to my satisfaction in the framework of the aforesaid agreement. *See* Def's Ex. 1. According to Schnapp, the agreement waived claims concerning IDB's guarantee, but not claims arising from IDB's alleged reneging on a promise to provide financing for the purchase of the controlling interest in Granit. IDB alleges, however, that Schnapp ignored the terms of the waiver by filing suit in Israel in October 1998, claiming that IDB failed to finance the purchase of Granit as allegedly promised. Schnapp filed the action in the Tel Aviv District Court on October 22, 1998. The action was subsequently dismissed in November of 2000.

During this period, both IDB and Schnapp engaged one another in litigation. Through his company, Ageret Sixteen 93, Ltd., Schnapp filed suit against IDB in New York state court (Civil Case Index No. 121345/98) in 1998. *See* Def's Request for Judicial Notice ("RJN"). The New York action was dismissed on the ground of forum non conveniens based on, among other reasons, the fact that Israel was an adequate alternative forum, the fact that a majority of the transactions out of which the action arose occurred in Israel, the location and citizenship of the parties and witnesses, the presence of a forum selection clause, and the applicability of Israeli law. *Id.*

On May 9, 1999, IDB filed a summary proceeding against Schnapp in Haifa District Court concerning the repayment of the sums due under the September 2 agreement. IDB asserts that Schnapp participated in the litigation, including making the arguments on claims he now asserts against IDB. The Court ultimately found for IDB. *See* Decl. of Gabriel Moyal–Maor, ¶ 3–5. IDB then sought to enforce its judgment in Israel. It then learned that Schnapp had already left Israel.

Schnapp claims that "[i]n August of 2000 an agreement was reached which allowed Mr. Schnapp to leave Israel." Opp. at 5. After judgment had been entered, Schnapp left Israel and relocated to Los Angeles, California. IDB tracked Schnapp to California, which led to IDB's filing of the underlying collection action. The time for appealing the judgment in Haifa Action has since passed. However, after the collection action in the present case was filed, Schnapp purported to appeal the Haifa Action in Israel.

## B. Removal and the Ninth Circuit Order

On January 6, 2006, asserting that it qualifies as a foreign sovereign within the meaning of the Foreign Sovereign Immunities Act ("FSIA") (28 U.S.C. § 1603), IDB removed the case to this Court. On February 1, 2006, this Court remanded the case to state court. On December 22, 2006, the Ninth Circuit vacated this Court's February 1, 2006 Order ("Ninth Circuit Order"). The Ninth Circuit Order instructed this Court to reinstate all motions which were vacated by its order of February 1, 2006. The Court was further instructed "to accept full briefing and carry out all fact-finding necessary to rule on the pending motions. Specifically, the district court shall determine whether Israel bank qualifies as a foreign sovereign under the [FSIA], and if so, whether Israel Bank, as a counterclaim defendant, may remove the entire action to federal court under the Act's removal provision. 28 U.S.C. § 1441(d). If the district court resolves both questions in Israel Bank's favor and finds removal jurisdiction proper, it shall then decide whether Israel Bank is entitled to immunity under § 1604 of the Act." *Id.*

On January 16, 2007, this Court reopened the case and instructed the parties to re-file any previously vacated motions they wished the Court to consider. On

February 9, 2007, Israel Bank filed three motions to dismiss: (1) a motion to dismiss pursuant to Fed R. Civ. P. 12(b)(1) on the basis of foreign sovereign immunity, (2) a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(3) on the grounds of a forum selection clause, and (3) a motion to dismiss upon the ground of forum non conveniens. On February 22, 2007, Moshe Schnapp filed a motion to remand the case to state court on the ground that IDB, as a plaintiff and counterclaim defendant in the action, may not remove the entire action under the FSIA's removal provision, 28 U.S.C. § 1441(d). On March 15, 2007, IDB filed a motion to dismiss upon the ground of international comity.

On March 23, 2007, the Court issued an Order Re Scope of Discovery which permitted the defendant and counter-claimant Moshe Schnapp to pursue limited jurisdictional discovery on the issue of the plaintiff's status as a foreign sovereign as of the date of the filing of the Complaint prior to the hearing on the present motions filed by both parties. Now before this Court are plaintiff and counterclaim defendant IDB's four motions to dismiss and defendant and counter-claimant Schnapp's motion to remand.

## II. DISCUSSION

### A. This Court May Address the Applicability of a Forum Non Conveniens Dismissal Before Assessing Any Other Threshold Objection

In their moving papers for the present motions as well as in the moving papers filed on the issue of the scope of discovery, the parties have debated the order of operations which should govern the treatment of the various motions presently before the Court. Plaintiff and counterclaim defendant IDB asserts that the Court should first address its "non-merits based dismissal" challenges prior to resolving defendant and counter-claimant Schnapp's motion to remand this case to state court. By contrast, Schnapp asserts that the Court must first determine whether IDB's removal to this Court was proper before addressing any of the plaintiff's various motions to dismiss based on Federal Rule 12(b)(1),(3), or (6).

■ The question as to the order of operations, however, has been answered by the Supreme Court since this Court issued its March 23, 2007 Order Re Scope of Discovery. In *Sinochem Intern. Co. Ltd. v. Malaysia Shipping Corp.,* — U.S. ——, 127 S.Ct. 1184, 1188, 167 L.Ed.2d 15 (2007), the Supreme Court held that a district court "has discretion to respond at once to a defendant's forum non conveniens plea, and need not take up first any other threshold objection." *Sinochem,* 127 S.Ct. at 1188. In other words, a district is no longer required to first establish its own jurisdiction or address other jurisdiction questions before deciding whether an action is more appropriately resolved elsewhere. *Id.* at 1189 ("In particular, a court need not resolve whether it has authority to adjudicate the case (subject matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.") *Id.; see also Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

In *Sinochem,* a Malaysian shipping company brought an action against a Chinese importer alleging fraudulent misrepresentation in connection with the shipment of steel coils. *Sinochem,* 127 S.Ct. at 1188. Sinochem moved to dismiss the suit on several grounds, including lack of subject-matter jurisdiction, lack of personal jurisdiction, forum non conveniens, and international comity. *Id.* The district court dismissed the action under the doctrine of forum non conveniens. *Id.* On appeal, the

Third Circuit vacated and remanded. *Id.* The Supreme Court then granted certiorari.

█ In *Sinochem,* the Supreme Court revisited the nature of and purpose behind the doctrine of forum non conveniens. A forum non conveniens dismissal "den[ies] audience to a case on the merits," *Sinochem,* 127 S. Ct at 1192, citing *Ruhrgas,* 526 U.S., at 585, 119 S.Ct. 1563. It is a determination that the merits should be adjudicated elsewhere. *See American Dredging Co. v. Miller,* 510 U.S. 443, 447–448, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994); *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 148, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). Forum non conveniens "is a non-merits ground for dismissal." *Sinochem,* 127 S.Ct. at 1192, citing *Ruhrgas,* 526 U.S., at 585, 119 S.Ct. 1563; *accord In re Papandreou,* 139 F.3d at 255; *Monde Re,* 311 F.3d at 497–498. Thus, a district court may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant. *Sinochem,* 127 S.Ct. at 1192.

█ The Supreme Court recalled that *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) and *Ruhrgas* recognized that a federal court has leeway "to choose among threshold grounds for denying audience to a case on the merits." *Sinochem,* 127 S.Ct. at 1192.

While *Steel Co.* confirmed that jurisdictional questions ordinarily must precede merits determinations in dispositional order, *Ruhrgas* held that there is no mandatory 'sequencing of jurisdictional issues.' In appropriate circumstances, *Ruhrgas* decided, a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction.

*Id.* (internal citations omitted). Where a district court would inevitably dismiss a case without reaching the merits and where the foreign party would be burdened with expense and delay if subjected to discovery concerning personal jurisdiction, the "judicial economy is disserved by continuing litigation" where the "gravamen of [the] complaint...is an issue best left for determination by the [foreign] courts." *Sinochem,* 127 S.Ct. at 1194. Therefore, if a court can "readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground. In the mine run of cases, jurisdiction 'will involve no arduous inquiry' and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum 'should impel the federal court to dispose of those issues first.'" *Id.* (internal citations omitted). However, "where subject-matter or personal jurisdiction is difficult to determine, and forum non conveniens considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." *Id.*

*Sinochem* directly applies to the present action. Here, Schnapp's motion to remand the case to state court turns on the issue of whether IDB qualifies as a foreign sovereign state, and, as such, whether it is immune from suit pursuant to the Foreign Sovereign Immunities Act ("FSIA") and removed this action properly to this Court as a counterclaim defendant. Therefore, it is not the case that the issue of jurisdiction "will involve no arduous inquiry." On the contrary, Schnapp's challenge to subject matter jurisdiction requires the Court to resolve the parties dispute as to IDB's status as a foreign sovereign as of the date Schnapp filed his Complaint in state court, December 8, 2005. As stated previously in the Court's March 24, 2007 Order Re Status Conference on Scope of Discovery and Sequencing of Motions, a determination as

to whether the Israeli government owned a majority of shares in IDB at the time Schnapp filed his complaint would entail an examination not only of the declarations submitted by IDB's executives, but also of Israel's Bank Shares in Arrangement Law. Accordingly, the Court finds .it the more prudent course, and in line with *Sinochem,* to consider the factors that weigh in favor of or against a dismissal on the ground of forum non conveniens.

## B. Forum Non Conveniens

■ A federal court has discretion to dismiss a case on the ground of forum non conveniens "when an alternative forum has jurisdiction to hear [the] case, and ... trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *American Dredging,* 510 U.S. at 447–448, 114 S.Ct. 981 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), in turn quoting *Koster v. (American) Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)). Dismissal for forum non conveniens reflects a court's assessment of a "range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 723, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citations omitted). The Supreme Court has characterized forum non conveniens as, essentially, "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *American Dredging,* 510 U.S. at 453, 114 S.Ct. 981, 127 L.Ed.2d 285; *cf. In re Papandreou,* 139 F.3d at 255 (forum non conveniens "involves a deliberate abstention from the exercise of jurisdiction").

■ The common-law doctrine of forum non conveniens "has continuing application [in federal courts] only in cases where the alternative forum is abroad," *American Dredging,* 510 U.S. at 449, n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285, and perhaps in rare instances where a state or territorial court serves litigational convenience best. *See* 14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3828, pp. 620–623, and nn. 9–10 (3d ed.2007).

■ A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum. When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor "applies with less force," for the assumption that the chosen forum is appropriate is in such cases "less reasonable." *Piper Aircraft,* 454 U.S. at 255–256, 102 S.Ct. 252.

■ At the outset of any forum non conveniens inquiry, the Court must determine whether an adequate alternative forum exists. *Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. 252. Second, the Court must determine whether private and public interests favor dismissal. *Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764, 767 (9th Cir.1991). Private factors include: ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and other problems that interfere with an expeditious trial. *Contact Lumber Co. v. P.T. Moges Shipping Co.,* 918 F.2d 1446,-1451–52 (9th Cir.1990). Public interest factors include: court congestion, the local interest in resolving the controversy, and the preference for having a forum apply a law with which it is familiar. *Id.* Adjudication of a forum non conveniens motion "is

committed to the sound discretion of the trial court." *Piper Aircraft.* 454 U.S. at 257, 102 S.Ct. 252.

▇ Before balancing the factors, however, the Court rejects Schnapp's argument that a district court may not dismiss his counterclaim because forum non conveniens dismissal "is dismissal of an entire action, not part of an action". Opp. at 1. Courts have consistently held that dismissal of a counterclaim upon forum non conveniens grounds is proper. *See Salton, Inc. v. Philips Domestic Appliances & Pers. Care,* 391 F.3d 871, 876 (7th Cir.2004) ("[W]e cannot find a bar to plaintiff's [motion to dismiss on grounds of forum non conveniens], especially when, as in this case, the main object is to get rid of a counterclaim—as to which the plaintiff, is of course, the defendant."); *see also Trujillo v. Banco Central Del Ecuador,* 35 F.Supp.2d 908, 916 (S.D.Fla.1998) (concluding that "an exercise of jurisdiction by this Court over the issues raised by the Counterclaim would be inappropriate."); *see e.g., United Bank for Africa PLC v. A. Coker,* 2003 WL 22741575, *5 (S.D.N.Y. 2003) ("[T]he libel counterclaim is dismissed on forum non conveniens grounds ...."); *Olin Corp. v. Fisons PLC,* 47 F.Supp.2d 151, 159 (D.Mass.1999) ("For the foregoing reasons, this Court grants Fison's motion to dismiss Nor–Am's cross-claim for indemnification on the ground of forum non conveniens."); *see also S. Megga Telecomm. Ltd. v. Lucent Tech., Inc.,* 1997 WL 86413, *11 (D.Del.1997).

### 1. Israel is an Adequate Alternative Forum

▇ "At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Lockman,* 930 F.2d at 768. As plaintiff notes, IDB is clearly susceptible to service of process in Israel, which ordinarily satisfies this requirement. More importantly, however, numerous courts have found Israel to be both an adequate and available alternative forum.

Courts routinely hold that Israel is a proper forum and dismiss cases on the grounds that it would be more appropriate to hear a case in Israel. *See e.g. Argoquest v. Israel Discount Bank, Ltd.,* 228 Fed.Appx. 733, 734 (9th Cir.2007); *Sussman v. Bank of Israel,* 801 F.Supp. 1068 (S.D.N.Y.1992), *aff'd,* 990 F.2d 71 (2d Cir. 1993) (conditionally dismissed based on forum non conveniens), and *J.B. Harris, Inc. v. Razei Bar Indus., Ltd.,* 37 F.Supp.2d 186 (E.D.N.Y.1998), *aff'd,* 181 F.3d 82 (2d Cir.1999) (dismissed based on forum-selection clause designating Israel). Indeed, the defendant, an Israeli citizen, has both initiated and participated in litigation in Israel. *See EFCO Corp. v. Aluma Sys. USA, Inc.,* 268 F.3d 601, 603 (8th Cir.2001) ("By suing Alumna in Canada first EFCO indicates that Canada would not be completely inconvenient for it.").

In arguing that Israel is not an adequate forum, Schnapp does not contend that Israeli courts lack due process or are not impartial tribunals. Instead, Schnapp argues that he would be extremely burdened by the requirement that litigants pay a filing fee before any litigation could be prosecuted. However, courts have concluded repeatedly that the existence of filing fees does not render a forum inadequate. *See Red Rock Holdings, Ltd. v. Union Bank Trust Co., Ltd.,* 1998 WL 474094, *6 (S.D.N.Y.1998) *aff'd* 181 F.3d 83 (2d Cir.1999) (granting forum non conveniens dismissal and rejecting argument that $2.5 million in fees prior to trial made Israel an inadequate forum; collecting cases holding same); *In re Air Crash Over Taiwan Straits,* 331 F.Supp.2d 1176, 1187–

88 (C.D.Cal.2004) (concerns regarding filing fees did not render foreign court inadequate for forum non conveniens purposes); *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir.2001) (same).

Second, Schnapp argues against forum non conveniens dismissal of his counterclaim on the basis that "it would be a fundamental denial of due process for [IDB] to be permitted to use an American court, state or federal, which recognizes the concept of 'compulsory counterclaims' and related transactions and occurrences as a basis for such counterclaims, to enforce a judgment obtained in a limited summary proceeding where he was not permitted to assert defenses that constitute legitimate offsets and counterclaims." (Opp to FNC Mot. at 13). However, Schnapp must do more than simply state this assertion. Schnapp must demonstrate that he was in fact prejudiced by the "limited" nature of the summary proceeding that occurred in Israel as well as show that he would be prejudiced in a future proceeding in an Israeli court if the present counterclaim is dismissed on forum non conveniens grounds. Schnapp has done neither. Moreover, requiring this Court to make an inquiry into the nature of Israeli civil procedure only underscores the rationale behind the forum non conveniens doctrine. The Ninth Circuit has long recognized that one of the principle purposes of the forum non conveniens doctrine is to avoid having the courts "conducting complex exercises in comparative law." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir.2001). Accordingly, the Court finds that Israel is an adequate alternative forum.

## 2. The Private Factors Weigh in Favor of Dismissal

Second, the Court must determine whether private and public interests favor dismissal. *Lockman,* 930 F.2d at 767. The Court notes that in his opposition, Schnapp does not directly address the public or private factors that weigh in favor or against a forum non conveniens dismissal. Private factors include: ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and other problems that interfere with an expeditious trial. *Contact Lumber,* 918 F.2d at 1451–52.

The Court finds that the private factors in this case favor resolution of Schnapp's counterclaim in Israel. Schnapp, although a current resident of California, is an Israeli citizen bringing three common law causes of action against an Israeli defendant. *See Piper Aircraft,* 454 U.S. at 256, 102 S.Ct. 252 ("[A] foreign plaintiff's choice [of forum] deserves less deference."); *see also Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.,* 61 F.3d 696, 703 (9th Cit.1995) (same).

All the transactions that gave rise to the present dispute, with the possible exception of Schnapp's suit against IDB in New York state court in 1998, occurred in Israel. The Ninth Circuit has held that the forum non conveniens analysis, particularly in commercial litigation, gives great weight to the place where the transactions occurred. *See Leetsch v. Freedman,* 260 F.3d 1100, 1104–05 (9th Cir.2001). Moreover, all of the allegations supporting the three causes of action for breach of contract, fraud, and negligent misrepresentation, respectively, discussed in Schnapp's cross-complaint and recounted by the Court above, occurred in Israel. *See* Cross–Complaint of Moshe Schnapp at 1–7. Schnapp attempted, in Israel, to secure financing from IDB to purchase another Israeli company. The overwhelming majority of the negotiations surrounding Schnapp's alleged agreement with IDB to finance the purchase of Granit occurred in Hebrew, were governed by Israeli law, and

were followed by several stages of litigation in the Israeli courts. Schnapp admits that his "claims are based on the failure to fund the acquisition of Granit" and that the alleged "agreement concerning the financing of Granit was made in Israel and would have been performed in Israel." Opp. to Motion to Dismiss on Ground of Forum Selection Clause at 6–8. Moreover, Schnapp himself recognizes that in his case he would "necessarily have to rely upon Israeli witnesses and documents in Hebrew." Opp. to Forum Non Conveniens at 1. Resolution of Schnapp's counterclaim would likely require extensive testimony from Israel-based witnesses and extensive translation of Hebrew documents. *See Leetsch,* 260 F.3d at 1104–05 (affirming forum non conveniens dismissal, in part, because the "sources of evidence on the issues will likely be located in [the foreign forum]").

The deference to the forum of the place where all the transactions occurred in this case is made even stronger here by the fact that Schnapp entered into at least one forum selection clause governing aspects of this litigation. *See J.B. Harris, Inc.,* 37 F.Supp.2d at 186, *aff'd,* 181 F.3d 82 (2d Cir.1999) (dismissed based on forum-selection clause designating Israel); *AAR Int'l, Inc. v. Nimelias Enters. S.A.,* 250 F.3d 510, 526 (7th Cir.2001) (forum selection clause part of freely negotiated agreement between international corporations results in party waiving objections to forum venue based on inconvenience); *see also* William A. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. before Trial, § 4:874 (The Rutter Group 2005) ("[A] forum-selection clause designating a forum different from that chosen by plaintiff eliminates the presumption in favor of plaintiff's choice of forum.") (emphasis in original); *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.,* 145 F.3d 505, 511 (2d Cir. 1998) (finding that presence of "forum-

selection clauses eliminate[d] [defendant's] burden of establishing that the other . . . . private and public factors weigh heavily in favor of adjudication in [a foreign forum]") (quotations omitted). Accordingly, the Court finds that the private factors weigh in favor of a dismissal on the ground of forum non conveniens.

### 3. The Public Factors Weigh in Favor of Dismissal

Public interest factors the Court must consider include: court congestion, the local interest in resolving the controversy, and the preference for having a forum apply a law with which it is familiar. *Contact Lumber,* 918 F.2d at 1451–52. In the context of these public factors, as stated above, the Ninth Circuit has also recognized that a primary rationale for the forum non conveniens doctrine is to have the district courts avoid "conducting complex exercises in comparative law." *Lueck,* 236 F.3d at 1144. As noted above, the parties have submitted numerous commercial and legal documents in Hebrew. Schnapp also mainly bases his motion to remand the case on an interpretation of Israel's Bank Shares Arrangement Law.

As IDB correctly notes, Israel, not California, has the greatest interest in the outcome of Schnapp's counterclaim. Israel has an interest in the integrity of a commercial transaction negotiated within its boundaries, to be carried out in Israel, concerning the purchase of an Israeli company, and allegedly fraudulently induced by an Israeli banking institution. Israel's interest in this case is further underscored by the existence of several Israeli court judgments on this matter In sum, it is indisputable that the "center of gravity" in this case is Israel and that the public factors weigh in favor of a forum non conveniens dismissal. In IDB's view, Schnapp's counterclaim "attempts to re-

litigate the merits of an underlying Israeli dispute," which by contractual agreement and common sense is more appropriately resolved in Israel. *See Trujillo v. Banco Central Del Ecuador,* 35 F.Supp.2d 908 (S.D.Fla.1998) (granting the counter-plaintiff's motion to dismiss the counterclaim based on forum non conveniens grounds). Without making any ruling as to whether Schnapp's counterclaim involves such an attempt, the Court does agree that common sense compels that his counterclaim be resolved in Israel. Accordingly, the Court grants IDB's motion to dismiss Schnapp's counterclaim on the ground of forum non conveniens. Because the Court finds that forum non conveniens dismissal is warranted here, it need not address IDB's remaining motions to dismiss nor Schnapp's motion to remand to state court.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the plaintiff's motion to dismiss defendant's counterclaim on the ground of forum non conveniens. This order of dismissal will qualify as the entry of judgment as to the defendant's counterclaim. The Court further denies defendant's motion to remand as moot, and remands the plaintiff's collection-proceeding to state court for further proceedings.

IT IS SO ORDERED.